## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| RICHARD A. LOPES,<br><br>        **Plaintiff,**<br><br>v.<br><br>**L&M CORRUGATED CONTAINER<br>CORPORATION, an Illinois corporation,<br>RICHARD R. LOPES, individually and<br>as the Trustee of the Richard R. Lopes<br>Revocable Living Trust,<br>LOPES FAMILY LIMITED PARTNERSHIP,<br>an Illinois Limited Partnership,<br>LOPES FAMILY LLC, a Wisconsin Limited<br>Liability Company,<br>STEVEN R. LOPES,<br>THOMAS A. GILDERSLEEVE,<br>JACK KUSSMAUL,<br>and DAVID SINGER,**<br><br>        **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

Plaintiff Richard A. Lopes complains against defendants L&M Corrugated Container Corporation ("L&M"), Richard R. Lopes, individually and as the Trustee of the Richard R. Lopes Revocable Living Trust ("Trust"), Lopes Family Limited Partnership ("FLP"), Lopes Family LLC ("LLC"), Steven R. Lopes, Thomas A. Gildersleeve, Jack Kussmaul and David Singer as follows:

## NATURE OF THE ACTION

1.      This is an action to remedy the Defendants' illegal, oppressive and fraudulent conduct toward Plaintiff, based upon Illinois common law and §12.56 of the Illinois Business Corporation Act, 805 ILCS 5/1 *et seq.* and to rescind a sale of stock. Plaintiff seeks to return nine hundred shares

1

of L&M stock conveyed to him in 2001, void a $400,000 note he executed in conjunction with the acquisition of those shares and be repaid $120,825, the total amount paid by him to L&M on said note to date, reinstate a $400,000 debt owed by Richard R. Lopes to L&M which L&M released for the benefit of Richard R. Lopes, and recover the fair market value of Plaintiff's remaining ownership interest in L&M, an amount of money far in excess of $75,000.

## PARTIES

2.      Plaintiff, Richard A. Lopes, is a citizen of the State of Texas. He currently owns 2900 shares (29%) of the total issued and outstanding shares of stock of L&M.

3.      L&M Corrugated Container Corporation is an Illinois Corporation duly incorporated on June 12, 1979, as a "close corporation" within the meaning the Section 12.56 of the Illinois Business Corporation Act, 805 ILCS 5/12.56. Its principal place of business is located at 2715 Deborah Avenue, Zion, Illinois. L&M is engaged in the manufacture and sales of corrugated packaging with plant facilities in both Zion, Illinois, and Platteville, Wisconsin. (A copy of L&M's Articles of Incorporation is attached as Plaintiff's Exhibit 1.)

4.      The Trust is an Illinois trust created on June 30, 1995. On or before April 30, 2001, the Trust owned 60 shares of L&M stock. On or about April 30, 2001, the Trust transferred nine (9) of its shares to Plaintiff and the remaining 51 shares to the FLP.

5.      The FLP was formed in the May of 2000 to own a 60% interest in and manage L&M as well as other assets contributed to it by the general partner. It received 51 shares of L&M stock in 2001. It was formally registered as an Illinois family limited partnership with its principal office at 2715 Deborah Avenue, Zion, Illinois, on June 27, 2003. Exhibit A to the FLP listed Defendant Richard R. Lopes as the general partner with 79.54% ownership and Plaintiff as one of the limited

2

partners with a 4.17% individual interest and a .42% limited partner interest as trustee for each of his two children. (A copy of the FLP Agreement is attached as Plaintiff's Exhibit 2.)

6.    The LLC was formed on or about September 14, 2006, as a Wisconsin limited liability company, with its principal office at 4499 Coon Hollow Road, Lancaster, Wisconsin. This LLC purports to have been formed to be an L&M shareholder and to own a 51% interest in L&M.

7.    Defendant Richard R. Lopes ("Dick Lopes") is Plaintiff's Father. He resides at 4499 Coon Hollow Road, Lancaster, Wisconsin. Dick Lopes is the general manager and controlling member of the LLC. Dick Lopes is also the chairman of L&M's Board of Directors and its president. He is also the Trustee of the Trust and general partner of the FLP.

8.    Defendant Steven Lopes ("Steve Lopes") is Plaintiff's brother. He resides at 4647 Hy-Point Road, Lancaster, Wisconsin. He is and was an L&M shareholder, officer and director at times material to this case. He owns 20% of L&M's shares of stock.

9.    Defendant Thomas Gildersleeve ("Gildersleeve") resides at 7813 Potter Hill Road, Lancaster, Wisconsin. He is L&M's accountant and a member of its Board of Directors.

10.    Defendant Jack Kussmaul ("Kussmaul") resides at 10725 County Road C, Woodman, Wisconsin. He is L&M's attorney and a member of its board of directors.

11.    Defendant David Singer ("Singer") resides at 525 Penny Lane, Philadelphia, Pennsylvania. He is a member of L&M's Board of Directors.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this matter under 28 U.S.C. §1332(a)(1). The amount in controversy exceeds $75,000. This case is between citizens of different states.

13.    Venue is proper in this district because the principal place of business for both L&M

3

and the FLP is located at 2715 Deborah Avenue in Zion, Illinois and the critical events occurring on and prior to September 20, 2007, took place in Zion, Illinois.

## FACTS COMMON TO ALL COUNTS

14. L&M has been engaged in the manufacture and sale of corrugated packaging in Illinois at all times material to this case. L&M has owned and operated a manufacturing facility located in Zion, Illinois, since 1979. L&M opened its Platteville, Wisconsin, facility in 2006.

15. L&M is a family-owned business incorporated in Illinois as a close corporation within the meaning of Section 12.56 of the Illinois Business Corporation Act, 805 ILCS 5/12.56. As such, each of the other shareholders owed and owe a fiduciary duty to Plaintiff just as they would if they were partners within the meaning of Illinois' Uniform Limited Partnership Act, 805 ILCS 215/408.

16. Neither L&M's Articles of Incorporation nor its By-Laws contain any provision limiting the voting rights of its shareholders. In the absence of language to the contrary, every shareholder in an Illinois corporation, such as the L&M Corporation, shall have the right to vote the number of shares he or she owns for as many persons as there are directors to be elected or to cumulate such votes and give one candidate as many votes as shall equal the number of directors multiplied by the number of such shares in all election for directors. Phrased differently, the Illinois's Business Corporation Act provides that Plaintiff is entitled to cumulative voting of his shares in all elections for directors of the L&M Corporation at 805 ILCS 5/7.40.

17. Under the provisions of the Illinois Business Corporation Act, a director may not be removed, either with or without cause, if the votes cast against removal are sufficient to elect that director if cumulatively voted at an election of the entire board of directors. 805 ILCS 5/8.35(a)(2).

18. Likewise, the Illinois' Business Corporation Act provides that Plaintiff may always

4

vote by proxy, subject only to compliance with the provisions of 805 ILCS 5/7.50(a).

19.     Plaintiff was employed by L&M in 1991 and has held various positions with L&M prior to his termination on September 20, 2007, including serving as a director, president, secretary, treasurer and general manager.  Plaintiff was also made a limited partner of the FLP on an individual basis as well as the trustee for his two children.

20.     Since its inception, the Board of Directors of L&M has consisted of six (6) persons and Plaintiff had served as a director of L&M since at least 2001.

21.     On September 1, 1994, Plaintiff purchased 20 shares of the 200 outstanding and issued shares of L&M for the sum of $67,000, giving him a 10% ownership interest in L&M.  In August of 1998, the Company acquired 100 shares from one of its shareholders.  These 100 shares were retired to treasury stock, thus increasing Plaintiff's share interest to 20%.

22.     In the spring of 2001, Defendant Dick Lopes proposed his plan to give Plaintiff control over L&M in exchange for L&M releasing Defendant Dick Lopes from his $400,000 debt to the Company and Plaintiff's agreement to pay L&M $400,000 for ten (10) shares of its stock to be transferred to Plaintiff from Defendant Dick Lopes.

23.     As a part of the plan: (a) Plaintiff would agree to pay L&M $400,000 over a forty (40) year period at $10,000 per year; (b) L&M would agree to forgive the $400,000 debt owed to it by Defendant Dick Lopes; (c) Defendant Dick Lopes would transfer nine (9) shares of L&M to Plaintiff upon his acceptance of the plan; (d) the FLP would have the remaining 51 shares of L&M and continue to hold Plaintiff's one share until Defendant Dick Lopes' death; and (e) Plaintiff would have control of the operation of L&M.

24.     Plaintiff accepted Defendant Dick Lopes' plan and as a result: (a) Plaintiff executed a

5

note for $400,000 payable to L&M and has paid the sum of $120,825 to L&M on said note as of the filing of this complaint; (b) Defendant Dick Lopes was released from his $400,000 indebtedness to L&M; (c) Plaintiff received nine (9) shares of L&M; (d) the FLP held the remaining 51 shares of L&M, one of which shares is to be delivered to Plaintiff upon the death of Defendant Dick Lopes; and (e) Plaintiff was to have operational control of L&M.

25.　　Between August 23, 1998, and September 28, 2006, L&M had only 100 shares of its stock issued and outstanding. On September 28, 2006, L&M's board voted a stock split whereby each share was replaced by 100 new shares; however, no new shares were ever issued reflecting the Board's action.

26.　　The operating agreement for the LLC, which was formed in 2006, states that Defendant Dick Lopes, as trustee of the Trust had contributed 5100 shares of L&M to the LLC. (A copy of the LLC Operating Agreement is attached as Plaintiff's Exhibit 3.)

27.　　Section 10 of the FLP specifically prohibited a transfer of "any Partnership Interest except in accordance with the terms of this section or with the prior written consent of all of the other Partners. An attempted transfer of Partnership Interest not in accordance with the terms of this section shall not be valid and shall not be reflected on the partnership books." (Exhibit 2, Section 10)

28.　　At no time has Plaintiff, either individually or as trustee for his two children, granted permission or consented to a transfer of the shares of L&M from the FLP to the Trust or the LLC nor had he been notified of an intent to transfer said shares from the FLP as required by Section 10 of the FLP Agreement. (Exhibit 2, Section 10)

29.　　On August 22, 2007, the Board of Directors', consisting of Plaintiff, Defendants Dick

6

Lopes, Steve Lopes, Gildersleeve, Kussmaul and Singer elected Plaintiff as President of L&M. Prior to this meeting, Plaintiff had held the positions of General Manager - L&M East, General Manager, Vice President, Treasurer and Secretary at various times. Plaintiff is unaware of any meeting which had been held prior to August 22, 2007, in which he had been elected or appointed "President." (A copy of the minutes of the meeting of August 22, 2007, is attached as Plaintiff's Exhibit 4.)

30.     On September 20, 2007 – less than one month later – Plaintiff's employment with L&M was terminated by the Defendant Dick Lopes without any prior notice.

31.     On October 1, 2007, Dick Lopes, on behalf of L&M, presented Plaintiff with a severance package continuing Plaintiff's regular salary through September 30, 2007, and further providing $100,000 severance allowance, to be paid in equal installments over the next ten months. This severance agreement also provided that Plaintiff could continue to use L&M's automobile and have his medical insurance paid by L&M through this ten-month period. (A copy of the severance package is attached as Plaintiff's Exhibit 5.)

32.     On October 25, 2007, Dick Lopes notified Plaintiff that he was reducing the agreed upon severance and asked that Plaintiff turn in L&M's automobile immediately. (A copy of this notice is attached as Plaintiff's Exhibit 6.)

33.     On or about October 26, 2007, Dick Lopes issued a notice of a special shareholders meeting to be held on November 9, 2007, for the purpose of reducing the L&M board of directors from six to five members and removing Plaintiff as a director. (A copy of this notice is attached as Plaintiff's Exhibit 7.)

34.     On November 2, 2007, Plaintiff, through his attorney, notified Defendant Kussmaul that the By-laws did not provide for amendment by the shareholders and objected to any attempt to

7

remove Plaintiff as a director since his 29% share ownership guaranteed him a directorship on a six member board. (A copy of this notice is attached as Plaintiff's Exhibit 8.)

35. On November 5, 2007, Defendant Kussmaul wrote to Plaintiff's attorney agreeing that L&M's By-laws provided for amendments to be made by directors not shareholders and stating that the reduction of the number of directors from six to five would be removed from consideration for the meeting of November 9, 2007. (A copy of Kussmaul's letter of November 5, 2007, is attached as Plaintiff's Exhibit 9.)

36. At the stockholders meeting of November 9, 2007, Defendants Dick Lopes and Steve Lopes voted to remove Plaintiff as one of the six directors of L&M and Plaintiff voted to continue to maintain his directorship. (A copy of the minutes of the meeting of November 9, 2007, is attached as Plaintiff's Exhibit 10.)

37. On November 9, 2007, the directors of L&M held a meeting without notice to Plaintiff. The minutes of this meeting state that "the sixth position of director was vacant". The minutes further reflect that Gildersleeve moved to reduce the number of L&M's directors from six to five. This motion was seconded by Steve Lopes and approved by the directors present. Thereafter each of the Defendants, Dick Lopes, Steve Lopes, Gildersleeve, Kussmaul and Singer consented to such action. (A copy of the minutes of this directors' meeting is attached as Plaintiff's Exhibit 11.)

38. In early April of 2008, Plaintiff received a notice of a meeting of the shareholders of L&M to be held on April 29, 2008. This meeting was rescheduled to May 28, 2008, and Plaintiff received the notice for the rescheduled meeting dated May 15, 2008, setting out the purpose of the meeting as follows:

1. a. Possible Amendment of the Articles of Incorporation to provide that

8

the cumulative voting rules provided in corporate statutes in the State of Illinois will not apply to the corporation.

b.     Possible Amendment of the By-Laws to change the number of directors to two.

2.     Election of directors for the coming year.

3.     Any other business that may come before the corporation.

(A copy of this notice is attached as Plaintiff's Exhibit 12.)

39.     On May 23, 2008, Plaintiff submitted his proxy exercising his right to vote against the proposed amendments to the Articles and By-Laws and voting for himself to fill the position of director. (A copy of this proxy is attached as Plaintiff's Exhibit 13.)

40.     On May 28, 2008, Plaintiff telephoned the place of the Shareholders' meeting and talked to Gildersleeve stating that he was "calling in for the shareholders meeting." Gildersleeve advised Plaintiff to wait at which time the phone was answered by Defendant Dick Lopes who said: "Rick, this is your Dad. I own 51% of the Company, I decide who I want on the Board. Good day." and immediately hung up.

41.     In early April of 2009, Plaintiff received a notice of a shareholders meeting to be held on April 29, 2009, for the purpose of amending the Bylaws of L&M to change the number of directors from five to six and to elect an individual by the name of Scott Meister to fill the sixth position. (A copy of this notice is attached as Plaintiff's Exhibit 14.)

42.     Once again, Plaintiff submitted his proxy for said meeting objecting to any amendment to the Bylaws and voting his shares for himself to fill the position of director. (A copy of this proxy is attached as Plaintiff's Exhibit 15.)

43.     The directors Dick Lopes, Steve Lopes, Gildersleeve, Kussmaul and Singer have

9

attempted and will continue to attempt to reduce the size of the Board of Directors and to bar or otherwise preclude the cumulative voting of shares and have acted and will continue to act to prevent Plaintiff from participating as a duly elected director of L&M.

44.     Since Plaintiff's termination of employment, Shareholder Defendants Steve Lopes and Dick Lopes, individually, and as the general manager of the LLC, the general partner of the FLP and the trustee of the Trust, have and will continue to attempt to deprive Plaintiff of his right to vote his shares of stock of L&M and have those votes counted in any matter brought before a shareholders meeting.

**COUNT I**
**OPPRESSION**

1-44.     Plaintiff realleges against all Defendants paragraphs 1 through 44 above, as paragraphs 1-44 and incorporates them by reference into this Count I as if specifically plead in support of Count I.

45.     Defendants Dick Lopes, in his capacity as the managing member of the LLC, the general partner of the FLP and the Trustee of the Trust, and Steven Lopes, owning a combined shareholding position of 71% of the stock of L&M, have breached their fiduciary duties to deal fairly, honestly and openly with Plaintiff by: (a) their illegal and wrongful removal of him as a duly elected member of the six member Board of Directors at the shareholders meeting of November 9, 2007; (b) their illegal and wrongful refusal to acknowledge or accept his nomination and votes for himself as a director at the shareholder meetings of November 9, 2007, May 28, 2008, and April 29, 2009, even though he had more than sufficient votes to elect himself as a director; (c) the illegal and wrongful attempt to change the number of directors from six without his consent at the shareholder

10

and/or director meetings of November 7, 2007, May 28, 2008, and April 29, 2009; (d) illegally and wrongfully attempting to amend the Articles of Incorporation to remove the requirement allowing cumulative voting at the shareholders meeting of May 28, 2008; and (e) their illegal & wrongful refusal to allow Plaintiff to vote his shares cumulatively. All of which actions were taken to freeze out Plaintiff from any and all corporate activities, render his 29% ownership interest worthless and deny Plaintiff his rights as an L&M shareholder.

46.      Director Defendants Dick Lopes, Steven Lopes, Gildersleeve, Kussmaul and Singer breached their fiduciary duties, which required L&M's other directors and majority shareholders to deal fairly, honestly, and openly with Plaintiff, by their sudden termination of his employment on September 20, 2007, and thereafter by: (a) illegally and wrongfully refusing to accept him as a director, even though he had more than sufficient votes to elect himself as a director, and had so exercised his voting power at each shareholders' meeting in 2007, 2008 and 2009; (b) illegally and wrongfully attempting to change the number of L&M Directors in an effort to squeeze out Plaintiff from L&M's board of directors; (c) illegally and wrongfully refusing to provide him with notice of any directors meetings beginning in November of 2007 or allowing him to participate therein; and (d) illegally, wrongfully and intentionally seeking to oppress, freeze out and deprive Plaintiff of the exercise of Plaintiff's rights as an L&M director.

47.      By their oppressive, illegal & wrongful actions, Defendants have reduced the value of Plaintiff's ownership interest in L&M and damaged him financially by their conduct as described in Count I.

WHEREFORE, Plaintiff respectfully seeks as relief and a remedy in this matter:

a)      The removal from office of any director or officer unwilling to comply with L&M's

11

By-laws and the Illinois Business Corporation Act, 805 ILCS 5/12.56;

b)      The appointment of a custodian to manage the business and affairs of the corporation to serve for a term and under conditions prescribed by the court;

c)      The purchase by L&M corporation or its shareholders of Plaintiff's ownership interests in the corporation for their fair value and on terms determined under Section 12.56(e) of Illinois Business Corporation Act, 805 ILCS 5/12.56(e);

d)      The reinstatement of Defendant Dick Lopes' debt to L&M of $400,000 plus any and all interest that should have accrued thereon from the date of last payment;

e)      The assessment of punitive damages from Defendants Dick Lopes, Steve Lopes, Jack Kussmaul and each other defendant, individually and jointly, found to have acted with  oppression, ill will, malice or  premeditation in this matter; and

f)      Any other relief deemed appropriate by the Court, including but not limited to the dissolution of the corporation if the Court deems it necessary.

## COUNT II
### BREACH OF FIDUCIARY DUTY BY SHAREHOLDERS

1-44.    Plaintiff repeats and incorporates by reference paragraphs 1 through 44 above against Defendants Dick Lopes and Steve Lopes as if specifically plead in support of Count II.

45.     On October 26, 2007, Dick Lopes sent notices for a shareholders meeting to be held on November 9, to consider the reduction of the number of directors from six to five and Plaintiff's removal as a director of L&M.

46.     At the November 9, 2007, L&M Shareholders meeting, although no action was taken on the reduction of the number of directors, Dick Lopes and Steve Lopes voted to remove Plaintiff as

12

a Director of the Corporation.

47.     At the meeting of November 9, 2007, Dick Lopes, Steve Lopes and Defendants Gildersleeve and Kussmaul refused to count Plaintiff's votes, which he voted on a cumulative basis, to maintain his position as a member of the six member Board of Directors and to oppose his removal as a Director of the Corporation in violation of 805 ILCS 5/8.35 (a)(2) of the Illinois Business Corporation Act.

48.     Thereafter, two additional shareholder meetings were scheduled on May 28, 2008, and on April 21, 2009, for the purpose of amending the By-Laws to reduce the number of directors, the election of directors and to consider other items.

49.     At each meeting Plaintiff submitted his proxy voting his shares against any amendment to the By-Laws, since pursuant to Article 13 of L&M's By-Laws reserved the right to amend its By-Laws to the directors, and again voting for himself as a director.

50.     In each instance, Defendants Dick Lopes and Steve Lopes refused to count Plaintiff's votes to elect himself as a member of L&M's six member board of directors.

51.     By voting to remove Plaintiff from the L&M Corporation Board of  Directors, refusing to count his shareholder votes in each of the aforesaid shareholders meetings for the election of directors, attempting  to amend the By-Laws of the L&M Corporation, in violation of those very same By-Laws, and otherwise attempting to freeze Plaintiff out of the legitimate exercise of his rights as a Shareholder and member of the Board of Directors of L&M Corporation, Defendants Steve Lopes and Dick Lopes have breached their fiduciary duties to Plaintiff.

WHEREFORE, Plaintiff respectfully seeks as relief and remedy in this matter:

a)      An Order requiring Defendants to rescind and disavow any and all acts or omissions

13

constituting a breach of their duty as a member of the Board of Directors;;

b)    The appointment of a custodian to manage the Board of Directors of L&M Corporation in order to see that all of Plaintiff's rights as a member of the Board of Directors and Shareholder are fully respected; and

c)    Any and all other relief deemed appropriate by the Court.

## COUNT III
### BREACH OF FIDUCIARY DUTY BY DIRECTORS

1-44.    Plaintiff repeats and incorporates by reference paragraphs 1 through 44 above against Defendants Dick Lopes, Steve Lopes, Gildersleeve, Kussmaul and Singer as if specifically plead in support of Count III.

45.    Given Plaintiff's right to engage in cumulative voting and Plaintiff's right to vote either in person or by proxy and his further right to elect himself as a director under 805 ILCS 5/8.35(a)(2), each member of the Board of Directors had and has a fiduciary duty to Plaintiff and each knew or should have known that they had no right to exclude Plaintiff as a legitimate member of L&M's board of directors.    When the Board of Directors failed to provide Plaintiff with his rights as a member of the Board of Directors of L&M Corporation, they illegally and wrongfully breached their fiduciary duty to Plaintiff, a shareholder owning at least 29% of the shares of L&M.

46.    By failing to give Plaintiff notice of the November 9, 2007, meeting of the Board of Directors, voting to reduce the number of L&M Directors from six to five and failing to seat Plaintiff as a member of the Board of Directors on November 9, 2007, and in each and every meeting of the directors thereafter, Defendants breached their fiduciary duty to Plaintiff as a member of the Board of Directors and as a Shareholder.

14

47.     By failing to provide Plaintiff with any notice of directors meetings or a copy of the minutes of the directors' meetings after the November 9, 2007, director's meeting, the other members of the L&M Board of Directors breached their fiduciary duty to Plaintiff as a member of the Board of Directors and a Shareholder of their close corporation.

48.     By attempting to bar or otherwise preclude Plaintiff from his position as a director of L&M by attempting to reduce the number of directors at the November 9, 2007, directors' meeting, and any other meeting thereafter, and otherwise freezing him out of the full ownership rights of his shares in L&M, Defendants Dick Lopes, Steve Lopes, Gildersleeve, Kussmaul and Singer have breached their fiduciary duty to Plaintiff as a member of the Board of Directors and as a Shareholder.

WHEREFORE, Plaintiff respectfully seeks as relief and a remedy in this matter:

a)      An Order requiring Defendants to rescind and disavow any and all acts or omissions constituting a breach of their duty as a member of the Board of Directors;;

b)      The appointment of a custodian to manage the Board of Directors of L&M Corporation in order to see that all of Plaintiff's rights as a member of the Board of Directors and Shareholder are fully respected; and

c)      Any and all other relief deemed appropriate by the Court.

## COUNT IV
### RESCISSION AND RETURN TO THE STATUS QUO ANTE 2001

1-44.   Plaintiff realleges against all Defendant paragraphs 1 through 44 above and incorporates them by reference into Count II as if specifically plead in support of Count IV.

45.     Plaintiff, prior to his termination on September 20, 2007, had reposed full faith and confidence in his father Defendant Dick Lopes.

15

46. Based upon the false representations made by Defendant Dick Lopes in the spring of 2001, specifying that Plaintiff would acquire a controlling interest in L&M, Plaintiff agreed to accept his father's plan to acquire the ten (10) shares of L&M stock for $400,000 from the Trust which also released Dick Lopes' debt of $400,000 to L&M.

47. Defendant Dick Lopes, individually and as trustee of the Trust and the managing partner of the FLP, as part of his scheme to relieve himself of the $400,000 personal debt he owed to L&M, fraudulently induced Plaintiff into signing a note for $400,000, using the faith and confidence Plaintiff reposed in his father, the majority shareholder of L&M, to approve substituting his own debt with Plaintiff's debt to L&M, with the false assurance that Plaintiff would acquire and maintain control of L&M.

48. Defendant Dick Lopes never intended to deliver control of L&M to Plaintiff and knew that his statements to Plaintiff were false when he made them in the spring of 2001. Said statements were only made for the purpose of having Plaintiff purchase the ten shares from him and substituting Plaintiff's debt to L&M for his thereby relieving Defendant Dick Lopes from his obligation to pay $400,000 to L&M.

49. By his conduct on and after September 20, 2007, Defendant Dick Lopes has made it impossible for Plaintiff to enjoy the intended value of his 2001 agreement with Defendant Dick Lopes and has caused Plaintiff damages of at least $400,000.

WHEREFORE, Plaintiff respectfully seeks as relief and a remedy in this matter:

a) The rescission of any and all obligations Plaintiff might have to pay $400,000 to L&M and the reimbursement to Plaintiff of the $120,825 paid by him on his $400,000 note to L&M;

16

b)   The return of the parties to their status before any note obliging Plaintiff to pay $400,000 to L&M;

c)   The reinstatement of Dick Lopes 2001 debt to L&M;

d)   The appointment of a custodian to determine whether the stock acquired by Plaintiff in 2001 should be returned to L&M, the Lopes Family Trust, the Lopes Family Limited Partnership, the Lopes Family LLC, Richard R. Lopes or any other entity, in conjunction with the rescission of any and all obligations of Plaintiff to pay on the 2001 note;

e)   An award of punitive damages from Defendant Dick Lopes and any other defendant acting in concert with said Defendant, individually or jointly, who may be found to have acted with ill will, malice or premeditation against Plaintiff in this matter; and

f)   Any other relief deemed appropriate by the Court, including but not limited to the dissolution of the corporation, if the Court deems it necessary.

## COUNT V
### DICK LOPES BREACH OF FIDUCIARY DUTY

1-44.   Plaintiff repeats and incorporates by reference paragraphs 1 through 44 above against Defendant Dick Lopes as if specifically plead in support of Count V.

45.   Dick Lopes, as the majority Shareholder in L&M Corporation, trustee of the Trust, general partner in the FLP, and general manager as well as controlling member of the LLC, Chairman of L&M's Board of Directors and Plaintiff's father, in whom he had reposed his faith and confidence, had and has the duty to deal honestly, fairly and openly with the Plaintiff.

46.   Prior to 2001, Dick Lopes periodically borrowed money from L&M Corporation for

17

his personal use. During 2001, he continued to borrow money from L&M Corporation for his personal use. Whether by actual execution of a promissory note or otherwise, by April 30, 2001, Dick Lopes had $400,000 of debt which he owed to L&M.

47.     During 2001, Dick Lopes was also the General Partner of the Lopes Family Limited Partnership which he had created for the purpose of owning the sixty (60) shares of L&M stock which were previously issued to him by L&M. In addition to owning these sixty (60) shares of L&M stock, the FLP was also formed to manage the FLP investments in L&M. As a result of Dick Lopes role as the general partner of the FLP, he took on fiduciary obligations to each and every other member of the FLP. He also assumed fiduciary obligations to minority shareholders in L&M Corporation as a result of his role as general partner of the FLP.

48.     As a result of his powers and rights as trustee of the Trust, managing partner of the FLP, chairman of the board of L&M Corporation, and father of the Plaintiff, Dick Lopes arranged to free himself of the debt he owed L&M Corporation in 2001 by purportedly giving Plaintiff control of L&M Corporation and selling him ten (10) shares of L&M Corporation stock.

49.     As part of this scheme that Dick Lopes carried out between April and May of 2001, Dick Lopes arranged for paperwork to be prepared by the attorney of his choice and signed by Plaintiff which purports to be a Promissory Note from Plaintiff to L&M, as well as other paperwork purporting to be a Buy-Sell Agreement, an Acknowledgment of a sale of nine (9) shares of stock by Dick Lopes' Trust to Plaintiff, and what purports to be the payment in full of a note previously made by Dick Lopes to L&M.

50.     There was, however, actually no payment by Dick Lopes of the $400,000 debt he owed to L&M.

18

51.     Dick Lopes never intended to pay his debt to L&M Corporation in the year of 2001 or thereafter. Likewise, he never intended to transfer control of L&M Corporation to Plaintiff. Nor did he intend to use the FLP as a method of conveying control of L&M Corporation to Plaintiff or holding any other interest in L&M Corporation for the benefit of the Plaintiff.

52.     Dick Lopes did, however, intend to use the Richard R. Lopes Revocable Living Trust, L&M, the note executed by Plaintiff taking on the obligation to pay $400,000 to L&M over the next forty (40) years, L&M stock certificates, and the May 1, 2001 buy-sell agreement to mislead Plaintiff into believing that Plaintiff was acquiring control of L&M along with the nine (9) shares of stock Dick Lopes arranged for L&M to issue to Plaintiff – and a tenth later on – i.e., the "one (1) share from the Lopes Family Limited Partnership [which] shall be gifted to Richard A. Lopes" upon the death of Richard R. Lopes. Both the FLP documents and the related buy-sell agreement provided to Plaintiff purport to require written notice to all FLP members and their written consent before any FLP units or shares can be sold or transferred.

53.     With regard to Dick Lopes' obligations as general partner of the FLP, the fact that "the partnership was essentially not being used" and was a sham all along was first disclosed to Plaintiff by correspondence from Dick Lopes' attorney, Defendant Kussmaul, to Plaintiff's attorney on or about March 3, 2009.

54.     On or about September 28, 2006, Dick Lopes created the LLC purportedly transferring the shares of L&M from the FLP to the LLC without notice to or obtaining the consent of Plaintiff in his individual capacity or as trustee for his two children's trusts, all of whom were limited partners of the FLP and in direct violation of Section 10 of the FLP Agreement.

55.     Defendant Dick Lopes also used his various offices and powers of influence over

19

Plaintiff to arrange for Steve Lopes to acquire a 20 shares of stock in the L&M Corporation in 2006 for a sum far below the price paid by Plaintiff for the shares acquired from Dick Lopes, by, among other things, pretending that he would take steps to lower the cost of Plaintiff's investment in L&M to a point equal to Steve Lopes' investment in L&M. In fact, he never intended to and did not equalize the payments for these investments.

56. By the above-described action, Dick Lopes has damaged Plaintiff financially and otherwise.

WHEREFORE, Plaintiff respectfully seeks as relief and a remedy in this matter:

a) The rescission of Plaintiff's 2001 note for $400,000 to L&M and reimbursement by Dick Lopes to Plaintiff for the $120,825 paid on this note to date;

b) The rescission of any other obligations imposed upon Plaintiff in conjunction with his 2001 agreements with Dick Lopes;

c) The reinstatement of Dick Lopes 2001 debt to L&M plus interest on that debt since May 1, 2001;

d) Money damages for the loss of the use of the money Plaintiff has made in payment on the 2001 note or otherwise incurred as a result of his 2001 agreements with Dick Lopes;

e) An award of punitive damages from Defendant Dick Lopes as well as any other defendant found to have acted in concert with him in support of his 2001 plan and found to have acted with ill will, malice or premeditation in this matter; and

f) Any and all other relief deemed appropriate by the Court.

## COUNT VI
### TORTIOUS INTERFERENCE WITH 2001 AGREEMENT

1-44.    Plaintiff realleges against Steve Lopes paragraphs 1 through 44   above, and incorporates them by  reference into this Count III as if specifically plead in support of Count VI.

45.      Plaintiff and Defendant Dick Lopes were parties to a valid and enforceable contract which provided that Plaintiff would control the business and operation of L&M as a result of Plaintiff's acquisition of the 10 shares of L&M in May of 2001 and the release of Dick Lopes' debt to L&M.

46.      Defendant Steve Lopes has, at all times material to this case, been aware of the above-described contract between Plaintiff and Defendant Dick Lopes.

47.      Nonetheless, Defendant Steve Lopes has intentionally and without justification induced Dick Lopes to breach his agreement with Plaintiff to obtain his right to control the business and operation of L&M Corporation.

48.      As a result of Defendant Steve Lopes' conduct, Plaintiff has lost the benefit of his 2001 agreement with Dick Lopes and has suffered mental anguish and emotional distress.

WHEREFORE, Plaintiff respectfully seeks as relief and a remedy in this matter:

a)      That Defendant Steve Lopes be enjoined from interfering with Plaintiff's rights under his agreement with Dick Lopes and any like or related conduct;

b)      An award of damages for Plaintiff's loss of the value of his 2001 Agreement with Dick Lopes;

c)      An award of damages for Plaintiff's mental anguish and emotional distress caused by Steve Lopes interference with Plaintiff's 2001 Agreement with Dick Lopes;

21

d)   An award of punitive damages from Defendant Steve and any other defendant, individually and jointly, found to have acted in concert with Defendant Steve Lopes and with ill will, malice or premeditation in this matter; and

e)   Any other relief deemed appropriate by the Court, including but not limited to the dissolution of the corporation, if the Court deems it appropriate.

## COUNT VII
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

1-44.   Plaintiff realleges against Defendants Dick Lopes, Steve Lopes, Gildersleeve, Kussmaul and Singer paragraphs 1 through 44 above, and incorporates them by reference into this Count IV as if specifically plead in support of Count VII.

45.   Prior to September 20, 2007, Plaintiff had a reasonable expectation of controlling and operating the business of L&M Corporation and to continue to be gainfully employed thereby.

46.   Nonetheless, Defendants Dick Lopes, Steve Lopes, Gildersleeve, Kussmaul and Singer have intentionally breached their fiduciary duties to Plaintiff, their fellow director, by their refusal to accept Plaintiff as a properly elected director of L&M, their attempts to reduce the number of directors and eliminate cumulative voting and their termination of his employment.

47.   By their actions Defendants have damaged Plaintiff financially and denied him the benefit of his ownership interest in L&M and have caused him great mental anguish and emotional distress.

WHEREFORE, Plaintiff respectfully seeks as relief and a remedy in this matter:

a)   That Defendants be enjoined against any further attempts to reduce the number of directors, eliminate cumulative voting or to otherwise dilute the voting rights of the

Plaintiff, and any like or related conduct;

b)    An award of compensatory damages for the loss of the value of Plaintiff's rights as an L&M shareholder and employee, and for the mental anguish and emotional distress caused thereby;

c)    An award of punitive damages from any of the Defendants, individually and jointly, found to have acted with ill will, malice or premeditation in this matter; and

d)    Any other relief deemed appropriate by the Court.

Respectfully submitted,

RICHARD A. LOPES, Plaintiff

By: _____
One of His Attorneys

Carmen V. Speranza
ARDC #:2687879
Robert M. O'Connell
ARDC # 2085569
Speranza & Bates
1401 N. Western Avenue
Lake Forest, IL 60045
(847) 615-1090
Fax: (847) 615-1096

23